TOGUT, SEGAL & SEGAL LLP
Attorneys for Albert Togut, Not Individually
But Solely in His Capacity as Chapter 7 Trustee
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Albert Togut
Neil Berger

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
                                   :

In the Matter            :        Chapter 7
                                   :        Case No. 14-11953 [REG]

-of-                  :

Technisphere Corporation,         :

                      Debtor.       :

------------------------------------------------------------ X

### TRUSTEE'S STATEMENT

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

        ALBERT TOGUT, not individually but solely in his capacity as the

Chapter 7 Trustee (the "Trustee") of the estate of Technisphere Corporation (the

"Debtor"), by his attorneys, Togut, Segal & Segal LLP (the "Togut Firm"), respectfully

submits this statement of his attempt to administer this estate (the "Statement"):

        1.      This case began on June 30, 2014 (the "Filing Date") when the

Debtor filed a voluntary Chapter 7 petition (the "Petition"). The Petition was filed

without schedules of assets and liabilities and without a Statement of Financial Affairs.

        2.      Prior to the Filing Date, the Debtor leased broadcast television and

audio-visual equipment, specializing in full systems integration, professional

equipment sales, rentals, and service. Upon information and belief, the Debtor was

established by Jack Goldman approximately 40 years ago, and he was active in the

business until he died in the Spring of 2014. Thereafter, Stacy Heit, Mr. Goldman's daughter, and John Marino, the Debtor's vice president, began to wind down the Debtor's business, and terminated operations prior to the Filing Date.

3.      Albert Togut was appointed as the Chapter 7 Interim Trustee of the Debtor on July 1, 2014. That same day, the Trustee: (a) contacted Debtor's counsel, Ms. Heit, and Mr. Marino to obtain additional information regarding the Debtor; (b) coordinated with Davis, Graber, Plotzker & Ward ("DGPW"), the Trustee's accountants, David R. Maltz & Co. ("Maltz"), and Mr. Marino to attend an inspection of the Debtor's business premises located at 134 West 26th Street, New York, New York; and (c) contacted the Debtor's landlord to advise him of the Debtor's bankruptcy filing.[1]

4.      On July 2, 2014, the Trustee caused the Debtor's Business Premises to be inspected, including an extensive inventory of used professional audio-visual equipment (the "Equipment"). At the conclusion of the inspection, the Trustee caused the locks to be changed at the Business Premises to safeguard the Equipment.

5.      The Trustee also caused a lien search of the Debtor to be conducted (the "Lien Search"). The Lien Search disclosed that two secured creditors[2] held blanket liens against all of the Debtor's assets, and that six equipment lessors[3] had filed UCC-1 financing statements on account of their equipment lease agreements with the Debtor (the "Equipment Contracts"). Based upon information obtained by the Trustee, it

---

[1]      Prior to the Filing Date, the Debtor entered into two lease agreements: (a) the *Lease Between Sped Inc., as Landlord, and Technisphere Corporation, as Tenant*, dated October 1, 2013 (the "Office Lease"), for the sixth floor premises commonly known as Suite 601, 134 West 26th Street, New York, New York (the "Office Premises"); and (b) the *Lease Between Dezer Properties LLC, as Landlord, and Technisphere Corporation, as Tenant*, dated October 1, 2013 (the "Store Lease"), for the first floor and basement of the premises commonly known as 134 West 26th Street, New York, New York (the "Business Premises").

[2]      The secured creditors are: (a) JP Morgan Chase Bank, NA; and (b) American Express Bank, FSB.

[3]      The UCC-1 financing statements were filed by the following equipment lessors: (a) All Points Capital Corp.; (b) Capital One Equipment Leasing & Finance; (c) Lakeland Bank; (d) LCA Bank Corporation; (e) M2 Lease Funds LLC; and (f) Tiger Leasing, LLC.

appeared that certain items of the Equipment are subject to either Equipment Contracts or Liens. Certain other items of the Equipment may be in possession of the Debtor's customers, and also subject to Equipment Contracts or Liens.

6.    On or around July 8, 2014, the Togut Firm contacted JP Morgan, the Debtor's largest secured creditor. Over the next two weeks, the Togut Firm had several conversations with JP Morgan regarding possibly financing the orderly liquidation of the Debtor's estate. Ultimately, JP Morgan declined to cooperate and declined to enter into an agreement to waive or reduce its claim.

7.    The Trustee concluded that the Office Lease could not be sold. The Trustee determined, in the exercise of his business judgment, that it would be in the best interests of the Debtor's estate to reject the Office Lease. On July 14, 2014, the Trustee caused the surrender of Debtor's Office Premises to the Landlord and entered into a stipulation with the Landlord rejecting the Office Lease, which was "So Ordered" by the Bankruptcy Court on July 22, 2014 [Docket No. 16], and the Office Lease was deemed rejected on June 30, 2014.

8.    On July 11, 2014, the Togut Firm contacted all of the attorneys representing plaintiffs in litigations pending against the Debtor and filed a Notice of Bankruptcy in each of those litigations.

9.    On July 12, 2014, the Togut Firm sent letters to all the Debtor's equipment lessors requesting: (a) copies of all Equipment Contracts; (b) the total amount of arrears due in connection with the Equipment Contracts; (c) the total outstanding balance due in connection with each of the Equipment Contracts; (d) an inventory list of equipment provided subject to their respective Equipment Contracts; and (e) current estimates of fair market value of the Equipment subject to their

respective Equipment Contracts, if available. Over the following weeks, the Trustee received responses from all but one of the Equipment lessors.

10.    The Trustee gave written notice to Chase Bank (a) advising that no withdrawals or transfers from any of the Debtor's accounts could be made without the prior written consent of the Trustee and (b) directing that any balances in the Debtor's accounts be immediately turned over to the Trustee. There were no funds in the accounts. Online banking records confirmed that the Debtor's checking account was overdrawn.

11.    The Trustee caused an inventory of the Debtor's Equipment located at the Debtor's Business Premises to be conducted. Maltz advised the Trustee that the value of the Debtor's inventory would not exceed $250,000 and that the costs of a sale of the inventory would be approximately $20,000.

12.    Based upon the inspection, inventory, and valuation by Maltz, the Trustee concluded that the claims secured by liens against the Equipment totaled approximately $800,000 (the "Secured Claims"), which far exceeded the liquidation value of the Equipment. The Trustee observed that while certain liens against the Equipment may be subject to disputes and defenses, the Trustee concluded that the likelihood of successfully avoiding those liens was uncertain. Thus, the Trustee determined that the Equipment was of inconsequential value and otherwise burdensome to the Debtor's Chapter 7 estate and should be abandoned.

13.    Because the aggregate amount of the Secured Claims far exceeded the estimated value of the Debtor's Personal Property, on July 25, 2014, the Trustee filed the *Notice of Abandonment of Debtor's Interests in All Personal Property Wherever Located to Secured Creditors* [Docket No. 18] (the "Notice of Abandonment"). That abandonment became effective on August 11, 2014.

4

14.    On July 30, 2014, Ms. Heit and Mr. Marino appeared for the Debtor at the first meeting of creditors held pursuant to sections 341 and 343 of the Bankruptcy Code (the "Section 341 Meeting").  Two creditors attended the Section 341 Meeting:  (a) Hila and Gerald Feil, unsecured creditors;  and (b) Lease Corporation of America, an equipment lessor.  The Trustee examined Ms. Heit and Mr. Marino, who confirmed that the remaining accounts receivable were uncollectable and that there were no remaining unencumbered assets to be administered by the Trustee.  The Section 341 Meeting was closed on July 30, 2014.

15.    On August 7, 2014, the Bankruptcy Court entered orders authorizing the Trustee to retain DGPW as his accountants [Docket No. 21] and the Togut Firm as his attorneys [Docket No. 22].

16.    On August 8, 2014, the Bankruptcy Court "So Ordered" the Trustee's *Stipulation and Order Rejecting the Unexpired Real Estate Lease with Dezer Properties LLC* [Docket No. 16].  The lease for the Debtor's business premises lease was rejected, effective July 31, 2014, and on August 11, 2014, the Trustee caused the surrender of Debtor's business premises to the Landlord.

17.    DGPW advised that avoidance actions might exist against certain individuals and entities.   However, upon further investigation, the Trustee determined that, even if successful, the avoidance actions were unlikely to lead to collectible judgments.

18.     There are no known assets to administer for the benefit of the

Debtor's creditors.  The Trustee has on this day filed an NDR.


DATED:  New York, New York
        September 16, 2014

ALBERT TOGUT, not individually but solely
in his capacity as the Chapter 7 Trustee,
By his Attorneys,
TOGUT, SEGAL & SEGAL LLP,
By:


_____/s/ Neil Berger_____
NEIL BERGER
A Member of the Firm
One Penn Plaza - Suite 3335
New York, New York 10119
(212) 594-5000